UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                           :

DOMINIC ANTONUCCI,            :

                           :     **OPINION AND ORDER**

            **Petitioner,**     :

                           :     08 Civ. 529 (SAS)

   - against -           :

                           :     04 CR 828 (SAS)

UNITED STATES OF AMERICA    :

                           :

           **Respondent.**    :
-----------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       Dominic Antonucci moves to vacate, set aside, or correct his sentence pursuant to section 2255 of title 28 of the United States Code ("section 2255") on the grounds that his "conviction was obtained and sentence imposed in violation of the Sixth Amendment Right to Counsel, and the Right to Effective Assistance of Counsel at all critical stages of the proceedings," and that his "conviction was obtained and sentence imposed in violation of the due process clause of the Fifth Amendment."[1] For the reasons set forth below, Antonucci's motion is denied.

---

[1]     Antonucci's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 ("Habeas Motion") at 2.

1

operated by Platinum.[6]  Again, by providing false information to investors,

Antonucci's brokers secured investment capital for New Focus.  The funds were

subsequently misappropriated by Antonucci by shifting losses incurred in other

trading accounts to the New Focus account.[7]  When Antonucci learned that his

business was under investigation by the Securities and Exchange Commission, he

directed his employees to destroy incriminating documents concerning the PIHC

and New Focus schemes.[8]

      On May 19, 2005, Antonucci and his attorney, Carl F. Schoeppl,

executed a written plea agreement with the Government (the "Plea Agreement").

Under the "Offense Level" heading, the Plea Agreement contained the following:

> 1.    Under Appendix A of the Sentencing Guidelines, §
> 2F1.1, U.S.S.G., is applicable to the offenses
> charged in Counts One Through Four of the
> Information . . . .[9]

---

[6]    *See id.*

[7]    *See id.* at 4.

[8]    *See id.* at 5.

[9]    By signing the Plea Agreement, Antonucci agreed to plead guilty to
Superseding Information S1 04 CR 828 (SAS), which replaced the original
Indictment. The Superseding Information, which contained a total of four counts,
included only one count for conspiracy to commit securities, mail and wire fraud.
*See* Plea Agreement at 1-2.

2.      Pursuant to § 2B1.1(a), U.S.S.G., the base offense level is 6.

3.      Pursuant to § 2B1.1(b), U.S.S.G., because the loss amount exceeded $1,000,000 but did not exceed $2,500,000, the base offense level is increased by 16 levels.

4.      Pursuant to § 2B1.1(b)(2)(B), U.S.S.G., because the offense involved more than fifty victims, the base offense level is further increased by 4 levels.

5.      Pursuant to § 3B1.3, U.S.S.G., because the offense involved an abuse of a position of trust, the base offense level is further increased by 2 levels.

6.      Pursuant to § 3C1.1, U.S.S.G., because the offense involved obstruction of justice, the base offense level is further increased by 2 levels.

7.      Pursuant to § 3B1.1, U.S.S.G., because the defendant acted as the organizer of criminal conduct involving five or more participants, the base offense level is further increased by 4 levels.

8.      Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to § 3E1.1(a), U.S.S.G. Futhermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional 1-level reduction is warranted, pursuant to § 3E1.1(b), U.S.S.G., because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to

4

allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 31. . . .

Based upon the calculations set forth above, the defendant's stipulated sentencing guidelines range is 108 to 135 months (the "Stipulated Guidelines Range").[10]

The Plea Agreement also contained provisions establishing that "the Court [would not be] bound by the above Guidelines stipulation . . . as to the determination of the proper Guidelines to apply to the facts,"[11] and that Antonucci would "not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 . . . any sentence within or below the Stipulated Guidelines Range . . . ."[12]

On May 19, 2005, Antonucci appeared before Magistrate Judge Gabriel W. Gorenstein and entered a guilty plea to the Superseding Information.[13] As part of Antonucci's plea allocution, Judge Gorenstein verified whether Antonucci understood the provisions of the Plea Agreement as well as the rights he was waiving by its execution. Judge Gorenstein specifically addressed: (1) the

---

10   *Id.* at 2-3.

11   *Id.* at 4.

12   *Id.*

13   Gov't Mem. at 8.

5

provision explaining that the United States Sentencing Guidelines ("Sentencing Guidelines") calculation resulted in 108 to 135 months in custody;[14]  (2) the non-binding nature of these calculations on the sentencing Court;[15]  and (3) the provision waiving Antonucci's direct appeal and collateral attack rights if the sentence imposed was below 135 months.[16]  Antonucci affirmatively expressed his understanding of these provisions.[17]  Further, Antonucci confirmed that: (1) he had discussed the terms and conditions of the Plea Agreement with his attorney;[18]  (2) no extraneous promises were made to him to secure his guilty plea;[19]  (3) he executed the Plea Agreement voluntarily;[20]  and (4) that he had, in fact, committed the charged offenses.[21]  Based on Antonucci's plea allocution, Judge Gorenstein found that there existed a sufficient factual predicate for his guilty plea and that

---

[14]    *See* 10/14/05 Transcript of Antonucci's guilty plea allocution ("Plea Tr.") at 11.

[15]    *See id.*

[16]    *See id.* at 12.

[17]    *See id.* at 11-12.

[18]    *See id.* at 11.

[19]    *See id.* at 10.

[20]    *See id.* at 12.

[21]    *See id.*

Antonucci understood the nature of the charges as well as the consequences of his plea.[22]  Consequently, Judge Gorenstein recommended that Antonucci's guilty plea be accepted.[23]

Prior to sentencing, the United States Probation Office prepared a Pre-Sentence Report ("PSR") addressing Antonucci's offenses.  In summarizing the stipulated Sentencing Guidelines calculations set forth in the Plea Agreement, the PSR noted that the Plea Agreement's identification of Section 2F1.1 as the relevant Guidelines provision "appears to be a typographical error.  The applicable guideline section is § 2B1.1."[24]

At sentencing, I stated that I had reviewed the various sentencing submissions, specifically mentioning the PSR.[25]  I then asked Antonucci's counsel whether he had reviewed the PSR, among other things, to which he responded in the affirmative.[26]  I also asked counsel whether he had any objections to the PSR,

---

[22]     See id. at 16.

[23]     See id.

[24]     PSR at 5.

[25]     See 1/5/07 Transcript of Antonucci's sentencing hearing ("Sent. Tr.") at 2.

[26]     See id.

7

to which he replied: "No, we do not."[27]   Finally, I asked Antonnucci's counsel

whether he had gone over the sentencing submissions (including the PSR) with his

client, to which he replied: "Yes, ma'am, I have gone over all of the items with

Mr. Antonucci."[28]   I proceeded to adopt the findings in the PSR and sentenced

Antonucci to 108 months in custody, the lowest point of the Sentencing

Guidelines range.[29]

On April 30, 2007, more than three months after the sentencing, I

entered a Restitution Order directing Antonucci to pay $2,950,578.77 in

restitution.[30]   This figure was identical to the amount calculated in the PSR.   At

sentencting, petitioner did not object to the amount of restitution contained in the

PSR.[31]   Nor did he challenge the subsequent identification of victims and their

corresponding loss amounts as stated in the Exhibits appended to the Restitution

Order.[32]

---

[27]   *Id.* at 3.

[28]   *Id.*

[29]   *See id.* at 3-5, 29.

[30]   *See* 4/30/07 Restitution Order, Ex. E to Gov't Mem., at 1.

[31]   *See* Sent. Tr. at 2-3.

[32]   *See* Gov't Mem. at 12.

## III.   LEGAL STANDARDS

### A.   Section 2255

Section 2255 allows a convicted person held in federal custody to petition the sentencing court to vacate, set aside or correct a sentence.  A motion filed under section 2255 must allege that:  (1) the sentence violated the Constitution or laws of the United States;  (2) the sentencing court was without jurisdiction to impose such a sentence;  (3) the sentence was in excess of the maximum authorized by law;  or (4) the sentence is otherwise subject to collateral attack.[33]  "[T]he Supreme Court has long held that in cases not involving a constitutional violation or lack of jurisdiction . . . Section 2255 relief is available only when the claimed error constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice' and presents 'exceptional circumstances when the need for the remedy afforded by the writ of habeas corpus is apparent.'"[34]  As such, "one of the principal functions of habeas corpus [is] to assure that no [person] has been incarcerated under a procedure which creates an

---

[33]    *See* 28 U.S.C. § 2255.

[34]    *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  *Accord Davis v. United States*, 417 U.S. 333, 346-47 (1974).

9

impermissibly large risk that the innocent will be convicted."[35]

## B.    Waiver of Collateral Attack Rights

A defendant's waiver of his right to collaterally attack his sentence under section 2255 is enforceable so long as the waiver is both "knowing and voluntary."[36]  To be knowing, the defendant must fully understand "the potential consequences of his waiver."[37]  The Second Circuit has consistently recognized the benefits to both defendants and the Government in upholding plea agreements.[38]  While the defendant gains limited exposure at sentencing, the Government expends fewer resources.  The benefit of the bargain is lost when a defendant can nonetheless collaterally attack his sentence.[39]

---

[35]     *Bousley v. United States*,  523 U.S. 614, 620 (1998) (quotation marks and citations omitted).

[36]     *United States v. Ready*, 82 F.3d 551, 556 (2d Cir. 1996).  *See also* Fed. R. Crim. P. 11(c)(6).

[37]     *Ready,* 82 F.3d at 556.

[38]     *See United States v. Quinones*, 511 F.3d 289, 323 (2d Cir. 2007) ("[T]he waiver was entered as part of a plea agreement process that permitted the defendant and the government to allocate risk, to obtain benefits, to achieve finality and to save resources.") (quotation marks and citation omitted).

[39]     *See United States v. Tang*, 214 F.3d 365, 368 (2d Cir. 2000); *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998); *United States v. Salcido-Contreras,* 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of

An enforceable section 2255 waiver bars claims based on grounds that arose after, as well as before, a plea agreement is signed.[40]  "However, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured."[41]

## C.   Ineffective Assistance of Counsel

A petitioner seeking to attack his sentence based on ineffective assistance of counsel must:  (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

---

a sentence conforming to the agreement.  Such a remedy would render the plea bargaining process and the resulting agreement meaningless.").

[40] *See Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam) ("There is every reason to believe the parties intended the waiver to apply to claims of error at sentencing as well as to claims relating to pre-pleading events since, for a defendant who pleads guilty, the main contested issues are ordinarily about the sentencing.").

[41]       *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) (citing *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam) ("[A] plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel."); *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (holding that a waiver of the right to file a section 2255 motion is unenforceable where the defendant claims ineffective assistance of counsel with respect to entering into the plea agreement containing that waiver)).

the proceeding would have been different."[42]

In analyzing a claim that counsel's performance fell short of constitutional standards, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument."[43] Instead, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[44] Strategic choices made after thorough investigation of the relevant law and facts are virtually unchallengeable while strategic choices made after less than complete investigation are reasonable to the extent that professional judgment supports the limitations on investigation.[45] "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[46] A

---

[42]    *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[43]    *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

[44]    *Id.* (quoting *Strickland,* 466 U.S. at 689).

[45]    *See Strickland,* 466 U.S. at 690-91.

[46]    *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690). *Accord Bell v. Cone,* 535 U.S. 685, 698 (2002) (noting that to demonstrate ineffective assistance of counsel at trial, "a defendant must overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy'") (quoting *Strickland,* 466 U.S. at 689).

12

habeas petitioner cannot prevail on a claim of ineffective assistance merely
because he disagrees with his counsel's strategy.[47] However, a petitioner "may
establish constitutionally inadequate performance if he shows that counsel omitted
significant and obvious issues while pursuing issues that were clearly and
significantly weaker."[48] Yet, "[t]he failure to include a meritless argument does
not fall outside the wide range of professionally competent assistance to which
[a][p]etitioner [i]s entitled."[49]

## IV.   DISCUSSION

### A.   Antonnucci's Collateral Attack to His Sentence Is Barred by the Waiver in His Plea Agreement

Antonucci's challenge to his sentence is based on his claim that his
"counsel's performance was deficient for failing to object to the plea agreement
which did not accurately and consistently apply a single sentencing guidelines

---

[47]   *See Jones v. Barnes,* 463 U.S. 745, 751-52 (1983) (explaining that an indigent appellant does not have a constitutional right to compel appointed counsel to press every nonfrivolous point on appeal, thus recognizing "the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review"); *Mayo,* 13 F.3d at 533 ("[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.").

[48]   *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir. 2000).

[49]   *Aparicio,* 269 F.3d at 99 (quotation marks and citations omitted).

13

manual."[50]  Specifically, Antonucci claims that his counsel should have objected to

the Plea Agreement's single reference to section 2F1.1 as the applicable section of

the Sentencing Guidelines for the offenses with which he was charged.  This

single reference to section 2F1.1, he claims, contradicted all the other references to

the applicable section in the Plea Agreement which consistently identified the

applicable section as section 2B1.1.[51]  He further argues that his Sentencing

Guidelines range should have been calculated under the 2000 Sentencing

Guidelines, not under the 2001 Sentencing Guidelines.[52]

            Antonucci's challenge is confined to the appropriate calculation of

his sentence under the Sentencing Guidelines and in no way calls into question the

process by which he agreed to waive his direct appeal and collateral attack rights

under the provisions set forth in the Plea Agreement.  With regard to the waiver

provision's validity, the record unambiguously reveals that Antonucci fully

---

[50]      Antonucci's Memorandum of Law in Support of his Motion to
Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28
U.S.C. § 2255 ("Pet. Mem.") at 9.

[51]      *See id.*

[52]      *See id.* Section 2F1.1 was deleted by consolidation when section
2B1.1 became effective on November 1, 2001. Under the 2000 Sentencing
Guidelines, Antonucci's charged conduct would have yielded a Sentencing
Guidelines range substantially lower than the range produced by the 2001 version
of the Guidelines. However, Antonucci's criminal conduct occurred from
November 2001 through August 2002.  Thus, there is no reason to apply the 2000
version of the Guidelines.

understood its potential consequences and voluntarily gave his assent. If such a claim were permitted to circumvent the plain language of the waiver agreement, the waiver of appeal provision would be rendered meaningless, as would the Plea Agreement itself.[53] Because the waiver was both knowing and voluntary, it effectively bars the claim Antonucci is attempting to advance.

## C.    Antonucci's Ineffective Assistance of Counsel Claim Is Without Merit

Antonucci's claim that his counsel was ineffective rests entirely on a single erroneous reference in the Plea Agreement to an inapplicable section of the Sentencing Guidelines – section 2F1.1. No other mention of section 2F1.1 was ever made in any other document, nor was a calculation under section 2F1.1 ever used during the proceedings. Antonucci's argument that he believed, in good faith, that he should have benefitted from a sentence calculated under the 2000 Sentencing Guidelines is belied by his clear assent to a sentence calculated under the 2001 Sentencing Guidelines which was expressed: (1) at his plea allocution; (2) at his sentencing hearing; and (3) by his signing the Plea Agreement itself.

Further, the PSR explicitly brought the erroneous reference to defense counsel's attention, but he did not seek to challenge the Plea Agreement on that

---

[53]     *See Djelevic,* 161 F.3d at 107.

basis. Ultimately, the pursuit of such a challenge would have had no effect on the sentence imposed because: (1) the correct section of the Sentencing Guidelines, section 2B1.1, was used in calculating the appropriate Guidelines range; and (2) the sentencing Court was not bound by any of the calculations set forth in the Plea Agreement, whether erroneous or not.[54] Thus, by not pursuing this frivolous argument, Antonucci's counsel made a reasonable strategic choice which fell within the wide range of reasonable professional assistance to which Antonucci was entitled. Antonucci's ineffective assistance of counsel claim must therefore be denied.

**D.    Antonucci's Due Process Claims Are Without Merit**

Antonucci claims that his Fifth Amendment right to Due Process was violated in two ways: (1) when the Court imposed a sentence calculated under section 2B1.1 of the Sentencing Guidelines despite the Plea Agreement's alleged ambiguity regarding the appropriate Sentencing Guidelines provision; and (2) when the Court allegedly failed to comply with 18 U.S.C. § 3664(f)(2) ("section 3664(f)(2)") in issuing the Restitution Order.[55]

---

[54]    *See* Plea Agreement at 4.

[55]    18 U.S.C. § 3664(f)(2) requires a sentencing court to specify in the restitution order the manner and schedule in which restitution is to be paid, considering: the financial resources and other assets of the defendant; projected

16

First, with respect to the custodial component of his sentence, Antonucci relies on the principle that "[m]isinformation or misunderstanding that is materially untrue regarding . . . material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process."[56] However, Antonucci neglects to mention the following omitted language: "Not every defect in the sentencing process, however, is of constitutional dimension."[57]

Here, if the applicable Guidelines range had been improperly calculated, it would have given rise to a "significant procedural error warranting remand for resentencing under [the abuse-of-discrtion] standard."[58] However, in establishing the applicable Guidelines range in this case, the existence of the typographical error in the Plea Agreement had been brought to my attention by the PSR. I consequently relied on the correct applicable section of the Sentencing Guidelines despite the presence of a typographical mistake in the Plea Agreement.

---

earnings and other income of the defendant; and any financial obligations of the defendant, including obligations to dependents.

[56]     *United States v. Malcolm*,  432 F.2d 809, 816 (2d Cir. 1970) (citing *Townsend v. Burke*, 334 U.S. 736 (1948)).

[57]     *Id.*

[58]     *United States v. Salim*,  549 F.3d 67, 72 (2d Cir. 2008).

17

Further, I find that Antonucci's Due Process argument relies on the same factual predicate underlying the arguments advanced under his ineffective assistance of counsel claim – namely, the existence of a typographical error. As explained above, these arguments are foreclosed by the waiver agreement contained in the Plea Agreement.[59]

Second, with respect to the restitutionary component of his sentence, Antonucci argues that restitution was improperly ordered because this Court: (1) accepted "without proof" the information set forth in the Government's proposed restitution order, and (2) ordered restitution in violation of section 3664(f)(2).[60]

---

[59]     See Djelevic, 161 F.3d at 107 (holding that a 2255 petitioner may not avoid the effect of his forfeiture of collateral attack rights by "dress[ing] up" his sentencing challenges as purported contstitutional violations). See also Moran v. United States, No. 96 Civ. 3657, 93 CR 275, 1998 WL 54616 at * 2 ( S.D.N.Y. Feb. 10, 1998), in which a habeas petitioner advanced an identical argument whereby he relied on a typographical error in his signed plea agreement to claim a violation of his right to due process. The court rejected this argument as meritless based on the fact that despite the typographical error, the petitioner had signed the plea agreement, and thus had explicitly agreed to the calculation of the sentencing guidelines applicable to his conduct as described in the plea agreement. In addition, the court found that the waiver provision of the signed plea agreement, wherein the petitioner waived his right to appeal his sentence if it fell within a specific range, effectively barred his collateral attack on his sentence. The same principles apply in the instant case.

[60]     See Pet. Mem. at 15. Section 3664(f)(2) requires a sentencing court to specify "the manner in which, and the schedule according to which, restitution is to be paid," with reference to the "financial resources and other assets of the defendant," the "projected earnings and other income of the defendant," and "any

18

Petitioner's evidentiary objection is without merit.  Petitioner was given ample

opportunity – at both his sentencing and again prior to the imposition of restitution

over three months later – to contest the $2.9 million restitution figure

recommended in the PSR.  He failed to do so.  The information upon which this

Court relied -- consisting of bank records and victim interviews -- was reliable and

uncontested.  Thus, there is no factual support for a  challenge to either the amount

of restitution or the procedures by which it was determined.

As for this Court's alleged failure to comply with section 3664(f)(2),

the Second Circuit has stated:

> The sentencing law requires a sentencing judge to consider
> a variety of factors in fashioning each aspect of the
> sentence.  Nonetheless, we have never required sentencing
> judges to state on the record that they considered the
> mandatory factors applicable to a sentence of
> imprisonment, probation or fine. . . . [W]e see no reason
> why our court should impose [this requirement] on
> sentencing judges with respect to restitution . . . .[61]

In issuing the Restitution Order, I considered the factors enumerated by section

3664(f)(2).  The language of the Restitution Order itself clearly states that

restitution is imposed pursuant to, *inter alia*, section 3664(f)(2).  The Restitution

---

financial obligations of the defendant including obligations to dependents."  18
U.S.C. § 3664(f)(2).

[61]      *United States v. Walker*, 353 F.3d 130, 131-32 (2d Cir. 2003).

19

Order also specifies that restitution is imposed jointly and severally and that all payments from petitioner's assets will be distributred on a pro rata basis. Moreover, the absence of an explicit payment schedule does not amount to a violation of due process.[62]  Antonucci's Due Process claims must therefore be denied.

## V.   CONCLUSION

For the foregoing reasons, Antonucci's motion pursuant to section 2255 is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, petitioner must make a "substantial showing of the denial of a constitutional right."[63]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits; a petitioner must merely show that reasonable jurists could differ as to whether "the

---

[62]   To the extent that petitioner is arguing that the record regarding the payment schedule is unclear, such ambiguity would be construed in favor of the immediate payment of restitution. *See United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004) ("A district court may properly order a schedule of restitution payments either by remaining silent as to the timing of payment, which would make such payment due in full 'immediately,' 18 U.S.C. § 3572(d)(1), or by setting forth a clear schedule.").  If petitioner truly had an objection to the Restitution Order, his recourse was to challenge that Order on direct appeal.  The absence of a payment schedule does not, therefore, rise to the level of a violation of due process.

[63]   28 U.S.C. § 2253(c)(2).

petition should have been resolved in a different manner or that the issues

presented were 'adequate to deserve encouragement to proceed further.'"[64]

Antonucci has made no such showing. Accordingly, I decline to grant a certificate

of appealability. The Clerk of the Court is directed to close this motion and this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 26, 2009

---

[64]      *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). *Accord Middleton v. Attorneys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

21

## - Appearances -

**For Petitioner:**

Cheryl J. Sturm, Esq.
387 Ring Road
Chadds Ford, Pennsylvania 19317
(484) 771-2000

**For Respondent:**

William J. Stellmach
Assistant United States Attorney
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-2101